IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

STEPHEN W. COLE,

                            Plaintiff,

    v.

ALASKA ISLAND COMMUNITY
SERVICES, INC. AND SOUTHEAST
ALASKA REGIONAL HEALTH
CONSORTIUM,

                            Defendant.

Case No. 1:18-cv-00011-TMB

**ORDER ON SEARHC'S MOTION
TO DISMISS (DKT. 25) AND FTC'S
MOTION TO DISMISS (DKT. 28)**

## I.    INTRODUCTION

The matter comes before the Court on Defendants South East Regional Health Consortium's ("SEARHC") and the Federal Trade Commission's ("FTC") separate Motions to Dismiss ("SEARHC's Motion" and "the FTC's Motion," respectively).[1] Plaintiff Stephen W. Cole opposes both Motions.[2] The motions have been fully briefed and are now ripe for resolution.[3] The parties did not request oral argument, and the Court finds that it would not be helpful. For the reasons stated below, SEARHC's Motion to Dismiss at docket 25 and the FTC's Motion to Dismiss at docket 28 are both **GRANTED**.

---

[1] Dkts. 25 (SEARHC's Motion) and 28 (FTC's Motion).

[2] Dkt. 31 (Response in Opposition).

[3] *See* Dkts. 25, 28, and 31. The Defendants did not file any reply, and the time in which to do so has now expired.

1

## II.    BACKGROUND

On May 9, 2019, Plaintiff Stephen W. Cole filed his First Amended Complaint (the "Amended Complaint") against SEARHC, the FTC, Alaska Island Community Services ("AICS"), the U.S. Attorney's Office, and the Department of Health and Human Services ("DHHS").[4] The Court liberally construes Mr. Cole's filings, as is appropriate with *pro se* litigants.[5] Mr. Cole's Amended Complaint makes two broad claims: first, that the federal Health Resources & Services Administration's ("HRSA") 340B Drug Pricing Program ("340B Program")—or the entities supported by the program—violated federal antitrust laws; second, that AICS, supported by the DHHS, engaged in illegal "[r]estraint of [t]rade" practices.[6] The only relief Mr. Cole seeks is $6,336,518 in treble damages for Defendants' alleged antitrust violations.[7]

SEARHC, on behalf of itself and AICS, moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[8] The United States, on behalf of the FTC, also moves to dismiss this action for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5).[9]

---

[4] Dkt. 20 (Amended Complaint).

[5] As noted in the Court's Order dismissing Mr. Cole's original complaint, "[t]he Court cannot refer to a prior pleading in order to make an amended complaint complete." Dkt. 17 at 2. Further, the Court informed Mr. Cole that "[a]ny claims not included in the amended complaint [would] be considered waived." *Id.* at 3. Thus, while the Court will construe Mr. Cole's Amended Complaint liberally, it does not look to his Original Complaint to supplement his claims.

[6] *Id.* at 4 and 9.

[7] *Id.* at 14.

[8] Dkt. 25.

[9] Dkt. 28.

## A. *Factual Background*

Mr. Cole owns and operates Stikine Drug—a pharmacy in Wrangell, Alaska.[10] Defendant SEARHC is a regional tribal health consortium of federally-recognized Indian tribes in Southeast Alaska.[11] Defendant AICS merged into SEARHC on April 1, 2017.[12] SEARHC now operates AICS's medical clinic and AICS's pharmacy.[13]

Since Mr. Cole acquired Stikine Drug in 2002, his prescription sales have fallen.[14] Consequently, Mr. Cole claims to have lost $2,112,106 in profits between 2003 and 2017.[15] He attributes the decrease in sales to the HRSA's 340B Program.[16] Specifically, he alleges that the DHHS, through the 340B Program, benefits covered entities, like AICS, and allows them to purchase pharmaceuticals for 25–50% less than he can.[17] As a result, Mr. Cole claims covered entities receive an unfair advantage in the marketplace because they are able to offer lower prices to insurers and customers.[18]

---

[10] Dkt. 20 at 4–9; Dkt. 31-1 (Response in Opposition).

[11] Dkt. 26 at 4 (SEARHC's Memorandum in Support).

[12] *Id.* at 5.

[13] *Id.*

[14] Dkt. 20 at 15–20.

[15] *Id.*

[16] Public Health Service Act, § 340B, 42 U.S.C. § 256b.

[17] Dkt. 20 at 4.

[18] *Id.* at 4; Dkt.31-1.

Mr. Cole further alleges that AICS has exacerbated the loss to his business by engaging in "[r]estraint of [t]rade practices."[19] For example, Mr. Cole asserts that at an unknown date, AICS's TideLine Clinic informed Stikine Drug that it would no longer be accepting prescription refill requests by fax or phone as of October 25, 2006.[20] This, Mr. Cole claims, was intended to "drive [Stikine] out."[21] Additionally, according to Mr. Cole, AICS directed dentists at its dental clinic to send prescriptions to AICS rather than unaffiliated pharmacies like Stikine Drug.[22] Mr. Cole claims that through these, and other tactics, AICS steered customers away from his pharmacy and toward their own.[23] Relatedly, Mr. Cole presents a letter from AICS's attorney's in 2005 warning him that it may pursue a defamation action if he continued to make "inflammatory and false" statements alleging improper conduct and mishandling of federal funds by AICS employees.[24] Mr. Cole claims that this letter, and the threat of litigation contained therein, has prevented him and his customers from discussing their complaints against AICS publicly.[25]

### B. Procedural History

Mr. Cole filed a complaint ("Original Complaint") on July 23, 2018, seeking $6,336,318 in treble damages under the Clayton Act, 15 U.S.C. § 12–27, and requesting the Court enter a

---

[19] Dkt. 20 at 9.

[20] *Id.* at 10.

[21] *Id.* at 9.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 13.

[25] *Id.* at 9.

4

declaratory judgement that the 340B Drug Program is unconstitutional.[26] Initially, Mr. Cole only named the AICS and SEARHC as defendants.[27] Although not named as a party in the Original Complaint, the United States was served a copy of the Original Complaint.[28] The United States subsequently moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[29] This Court granted the United States' Motion to Dismiss without prejudice, giving Mr. Cole leave to amend his complaint.[30]

On May 9, 2019, Mr. Cole filed his Amended Complaint adding the U.S. Attorney's Office, DHHS, and the FTC as defendants.[31] The Amended Complaint alleges that AICS and SEARHC—acting with funds received from DHHS—committed antitrust violations in the retail pharmaceutical market.[32] The only relief Mr. Cole seeks in his Amended Complaint is treble damages totaling $6,336,518 for Defendants' alleged antitrust violations.[33] Simultaneously, Mr. Cole also filed a Motion for Authorization to Investigate requesting that the Court direct the FTC to investigate the legality of the 340B Program.[34] The Court denied Mr. Cole's motion, as the

---

[26] Dkt. 1 at 4,24 (Original Complaint).

[27] *Id.* at 2.

[28] Dkt. 16 at 2.

[29] *Id.* at 1.

[30] Dkt. 17.

[31] Dkt. 20.

[32] *Id.* at 4–13.

[33] *Id.* at 14. Mr. Cole did not reassert his claim requesting a Declaratory Judgment in his Amended Complaint. *Id.*

[34] Dkt. 21.

Case 1:18-cv-00011-TMB   Document 32   Filed 10/11/19   Page 5 of 22

Court does not have the power to order the FTC to exercise its discretionary authority under the writ.[35]

SEARHC filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on July 17, 2019, seeking dismissal of all claims against SEARHC and AICS.[36] Specifically, SEARHC argues that the Court lacks subject matter jurisdiction over Mr. Cole's claims because SEARHC and AICS enjoy tribal sovereign immunity from unconsented private suits.[37] The United States, on behalf of the FTC, filed a separate Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.[38] The FTC asserts that Mr. Cole's First Amended Complaint was not delivered, thus, service was insufficient.[39] The FTC also argues that allowing Plaintiff to effect proper service would be futile because the Amended Complaint seeks relief from the FTC that the Court has already denied.[40]

Mr. Cole opposes both motions in a single response.[41] First, Mr. Cole asserts he sent his only paper copy of the Amended Complaint to the Court and requested the FTC and HHS find a copy of the complaint through the Case Management/Electronic Case Files system.[42] Second, Mr.

---

[35] Dkt. 42. In so denying, the Court construed Mr. Cole's request as a motion seeking a writ of mandamus. *Id*.

[36] Dkt. 25.

[37] Dkt. 26 at 1–2.

[38] Dkt. 28.

[39] *Id.* at 3.

[40] *Id.*

[41] Dkt. 31.

[42] Dkt. 31-1.

Case 1:18-cv-00011-TMB   Document 32   Filed 10/11/19   Page 6 of 22

Cole restates, and attempts to clarify, his claims in his Amended Complaint and argues against their dismissal. The motions have been fully briefed and are now ripe for resolution.[43]

### III.    LEGAL STANDARD

When challenged by a motion to dismiss, *pro se* filings "must be 'liberally construed,' and 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . .'"[44] In doing so, courts must "use common sense in interpreting the frequently diffuse pleadings of *pro se* complainants."[45]

### A.  *Motion to Dismiss Under 12(b)(1)*

Fed. R. Civ. P. 12(b)(1) allows parties to seek dismissal of claims over which the court lacks subject matter jurisdiction. The issue of tribal sovereign immunity is "quasi-jurisdictional."[46] When tribal sovereign immunity is properly raised in a 12(b)(1) motion, a district court is not bound to accept the plaintiff's allegations as true in resolving that issue,[47] nor is it bound by the four corners of the complaint; instead, a court may consider additional materials in resolving a 12(b)(1) motion.[48] Once a party moves to dismiss under 12(b)(1), "'the party asserting subject

---

[43] Dkts. 25, 28, and 31.

[44] *Nicdao v. Chase Home Fin.*, 839 F. Supp. 2d 1051, 1061 (D. Alaska 2012) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

[45] *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974).

[46] *See, e.g.*, *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

[47] *See, e.g.*, *Pistor*, 791 F.3d at 1112; *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

[48] *Pistor*, 791 F.3d at 1112 ("[T]he declarations presented evidence going to the question of quasi-jurisdiction, and the district court was not bound to consider only the face of the complaint.").

7

matter jurisdiction has the burden of proving its existence,' i.e. that immunity does not bar the suit."[49]

### B. Motion to Dismiss Under 12(b)(5)

Under Fed. R. Civ. P. 12(b)(5), a party may move to dismiss a complaint due to insufficient service of process. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."[50] "To determine whether service of process is proper, courts look to the requirements of [Rule 4]."[51] *Pro se* litigants must follow the same rules of procedure that govern other litigants.[52]

Under Fed. R. Civ. P. 4(c)(1), "[a] summons must be served with a copy of the complaint," and "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnished the necessary copies to the person who makes service." Moreover, under Rule 4(l), "[u]nless service is waived, proof of service must be made to the court." Rule 4(m) further provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." "At a minimum, 'good cause' means excusable neglect."[53]

Good cause can also be demonstrated by explaining steps taken to correct deficiencies in service once a defendant notifies a plaintiff that it has not been properly served, or by evidence of

---

[49] *Id* (quoting *Miller v. Wright*, 705 F.3d 919, 927–28 (9th Cir. 2013)).

[50] *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

[51] *See, e.g.*, *Cho, et al. v. UCBH Holdings, Inc.*, 890 F. Supp. 2d. 1190, 1198 (N.D. Cal. 2012).

[52] *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

[53] *Cho*, 890 F. Supp. 2d at 1198 (citing *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)).

8

a plaintiff's diligence in attempting to serve a defendant.[54] The Ninth Circuit has also stated that a "plaintiff may be required to show the following factors to bring the excuse to the level of good cause: (a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed."[55]

"If there is no good cause for the delay, a court has discretion to dismiss without prejudice or to extend the time period."[56] "There is no specific test that a court must apply in exercising its discretion."[57] "Prejudice to either party is one factor that a court may consider, including statute of limitations issues."[58] "Courts may also look at whether plaintiff has substantially complied with the service requirements of Rule 4(m)."[59]

### C.  Sua sponte dismissal

Courts may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and, until proven otherwise, cases lie outside the jurisdiction of the

---

[54] *See Puett v. Blandford*, 912 F.2d 270, 276 (9th Cir. 1990) (noting district court's acknowledgement of plaintiff's diligence and holding that failure to obtain proof of service was not due to plaintiff's neglect). *See also Rowell v. Ewing Bros. Towing Co.*, 471 F. App'x 597, 599 (9th Cir. 2012) (affirming district court dismissal for failure to serve where plaintiff did not show good cause for why he did not take steps to correct deficiencies in service once defendants notified him that it had not been properly served).

[55] *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) (internal quotation marks omitted).

[56] *Cho*, 890 F. Supp. 2d at 1198 (citing *In re Sheehan*, 253 F.3d at 512).

[57] *Id.*

[58] *Cho*, 890 F. Supp. 2d at 1198 (citing *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess? Inc.*, 366 F.3d 767, 773 (9th Cir. 2004)).

[59] *Cho*, 890 F. Supp. 2d at 1198 (citing *Tyson v. City of Sunnyvale*, 159 F.R.D. 528, 530 (N.D. Cal. 1995)).

court.[60] A Rule 12(b)(1) jurisdictional challenge may be either facial or factual.[61] In a facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming all the allegations are true and construing the complaint in the light most favorable to plaintiff.[62] When a claim is so defective that amendment could not possibly cure the complaint, the suit may be dismissed as frivolous without leave to amend for lack of subject matter jurisdiction.[63]

Courts may also dismiss a suit *sua sponte* for failing to state a claim under Fed. R. Civ. P. 12(b)(6).[64] Such a dismissal may be made without notice where the claimant cannot possibly win relief.[65] If claims are wholly frivolous, district courts lack subject matter jurisdiction to consider them.[66] Generally, where a pleading is defective but could be amended to state a claim, an opportunity must be afforded the *pro se* plaintiff to seek such an amendment.[67] A court need not grant leave to amend where it finds that "the pleading could not possibly be cured by the allegation of other facts."[68]

---

[60] *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377–78 (1994).

[61] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[62] *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[63] *See Scholastic Entm't, Inc. v. Fox Entertainment Grp.*, 336 F.3d 982, 985–86 (9th Cir. 2003) (stating that a judge may dismiss for lack of subject matter jurisdiction *sua sponte* without giving notice or an opportunity to amend).

[64] *See Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir.1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 at 593 (1969)).

[65] *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

[66] *See Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000).

[67] *See Lopez v. Smith,* 203 F.3d 1122, 1130–31 (9th Cir.2000) (en banc).

[68] *Id.* at 1130.

## IV. ANALYSIS

SEARHC filed a Motion to Dismiss Mr. Cole's claims against it and AICS pursuant to Fed. R. Civ. P. 12(b)(1) on July 17, 2019.[69] Specifically, SEARHC argues that it and AICS, to the extent it still exists, enjoy tribal sovereign immunity from unconsented private suits.[70] The United States, on behalf of the FTC, filed a separate Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient process.[71] The FTC asserts that Mr. Cole's First Amended Complaint was not delivered to it, thus, service was insufficient.[72] Mr. Cole opposes both motions in a single response.[73] The Court considers each motion in turn.

### A. *SEARHC and AICS are Entitled to Dismissal for Lack of Subject Matter Jurisdiction.*

SEARHC's 12(b)(1) motion wholly rests on its assertion of tribal sovereign immunity.[74] AICS merged with SEAHC in 2017, because AICS is no longer a separate entity, the Court finds whatever immunity SEARHC has from suit would also extend to AICS.[75] Tribal sovereign immunity is a creature of federal common law.[76] Entities protected by tribal sovereign immunity

---

[69] Dkt. at 25.

[70] Dkt. 26 at 1–2.

[71] Dkt. 28.

[72] *Id.* at 3.

[73] Dkt. 31.

[74] Dkt. 26 at 2.

[75] SEARHC has asserted that AICS merged with SEARHC in April 1, 2017, prior to Mr. Cole's suit. Dkt. 26 at 5. Mr. Cole does not dispute this. Therefore, to the extent that AICS still exists as a division of SEARHC, it shares in SEARHC's immunity from suit. *See Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131, 1140 (N.D. Okla. 2001) ("The simple act of a tribe creating a corporate merger with a non-Indian entity, much like a contract action, is not considered a waiver of sovereign immunity.").

[76] *Id.* at 758-60 (noting that "the Court has taken the lead in drawing the bounds of tribal immunity . . . ."). *See also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ("Indian tribes have long

11

may not be sued by private parties.[77] Immunity generally attaches to federally-recognized tribes and entities which act as "arm[s] of the tribe[s]."[78] In some cases, tribal immunity may "extend[ ] to . . . organizations comprised of multiple tribes" or entities created by more than one tribe.[79] Tribal sovereign immunity may be waived by the tribe or may be abrogated at Congress' discretion.[80] The party asserting that the court has jurisdiction bears the burden to prove that sovereign immunity does not bar his suit.[81]

SEARHC argues that it is an "arm of the tribes" of Southeast Alaska.[82] Mr. Cole does not expressly dispute this. However, Mr. Cole states in his Amended Complaint that "SEARCH [sic] has abused their mandate and gone into non healthcare business."[83] Additionally, Mr. Cole restates his antitrust claims in his Response to SEARHC's motion.[84] Construing his assertions liberally, the Court finds that Mr. Cole contests SEARHC's assertion of immunity on two grounds: first, Mr. Cole claims that by expanding its services into the "non healthcare business," SEARHC was

been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.").

[77] *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998).

[78] *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008).

[79] *Barron v. Alaska Native Tribal Health Consortium*, 373 F. Supp. 3d 1232, 1237 (D. Alaska 2019) (citing *White*, 765 F.3d at 1018 and *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 685 (8th Cir. 2011)).

[80] *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509 (1991).

[81] *Pistor*, 791 F.3d at 1112. There is no authority which shifts this burden in cases involving *pro se* plaintiffs.

[82] Dkt. 26 at 13.

[83] Dkt. 20 at 4.

[84] Dkt. 31-1.

not acting as an arm of the tribe during some or all of the relevant period; and second, Mr. Cole claims that tribal immunity has been abrogated in the context of antitrust suits. The Court finds each of these contentions unavailing.

> 1. For All Relevant Periods, SEARHC Operated as an "Arm of the Tribes" of Southeast Alaska.

The Ninth Circuit, in *White v. University of California*, identified five factors for courts to consider when determining whether an entity is entitled to tribal sovereign immunity: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities."[85] If a court finds that an organization is an "arm of the tribe," it must dismiss any claims against that entity, unless Congress has abrogated tribal immunity for the cause of action at issue.[86] The Court, therefore, first considers whether SEARHC is an "arm of the tribe" under the five-factor analysis articulated in *White*.

SEARHC claims—and Mr. Cole has not disputed—that SEARHC's is an "inter-tribal consortium" comprised of fifteen federally-recognized tribes of Southeast Alaska created by tribal resolutions; that SEARHC is governed by a Board of Directors comprised of elected and appointed members from its constituent tribes; that the constituent tribes intended to share their sovereign immunity with SEARHC; and that, on behalf of the tribes, SEARHC manages funding received

---

[85] 765 F.3d at 1025. In *White*, the court considered whether a "Repatriation Committee" formed by resolutions of twelve tribes was entitled to share the tribes' sovereign immunity. *Id.* at 1018. Applying the five-factor test, the court held that each of the five factors was met. *Id.* at 1025. The court specifically noted, the whole purpose of the Repatriation Committee—to recover remains and educate the public—was core to the notion of sovereignty. *Id.*

[86] *See e.g.*, *Okla. Tax Comm'n,* 498 U.S. at 509.

13

from the Indian Health Service.[87] Therefore, the Court finds that the first, third, fourth, and fifth *White* factors weigh in favor of finding the SEARHC, and all its divisions, is an arm of the tribes.[88]

Mr. Cole's arguments are construed to contest the second *White* factor: SEARHC's purpose.[89] As discussed in *White*, an organization whose purpose is "core to the notion of sovereignty[,]" or promotes "preservation of tribal cultural autonomy [and] preservation of tribal self-determination," is more likely to share the tribes' immunity.[90] As evidence of its purpose, SEARHC points to its Bylaws, which state as follows:

> "SEARHC is organized . . . to develop, operate and maintain health programs for Alaska Native and American Indian people in Southeast Alaska in a culturally appropriate manner; . . . to contract with the United States Government to operate health programs in Southeast Alaska under authority of the Indian Self-Determination and Education Assistance Act, P.L. 93-638, 25 U.S.C. § [5301] *et seq.*, as amended, and the Indian Health Care Improvement Act, 25 U.S.C. § 1601 *et seq.*, as amended; . . . and . . . to provide health care to underserved communities in Southeast Alaska."[91]

Like the Repatriation Committee at issue in *White*, SEARHC's purpose of contracting with the federal government to provide healthcare to tribal members furthers "tribal self-determination and

---

[87] Dkt. 26 at 9–13.

[88] Because Mr. Cole bears the burden to prove that tribal sovereignty does not bar his suit, failing to provide evidence contesting specific elements must result in a finding that the elements weigh in favor of sovereign immunity. *Pistor*, 791 F.3d at 1112.

[89] Mr. White alleges that SEARHC has "abused its mandate." Dkt. 20 at 4. The Court construes this statement to contest that SEARHC is acting with purpose that is congruent with sovereign immunity.

[90] *White*, 765 F.3d at 1025.

[91] Dkt. 27-3 at 1.

self-governance" and "preserv[es] cultural autonomy," which are central policies to the doctrine of tribal sovereign immunity.[92]

Mr. Cole does not dispute the contents of SEARHC's Bylaws or that healthcare is an important sovereign interest. However, Mr. Cole does claim that "[SEARHC] has abused their mandate and gone into non healthcare business."[93] To support his claim, Mr. Cole attached a letter dated September 6, 2018 from Trish and Dirk White of Sitka, Alaska.[94] The letter states that SEARHC's mission statement "was modified to include ALL folks-not just Alaska Native beneficiaries" and that SEARHC's operations now included "catering/food service business, short term rental business and [ ] a transportation business."[95]

Thus, the Court must consider whether the alleged inclusion of non-healthcare commercial enterprises, or the expansion of services to non-Native Alaskan individuals, would displace tribal sovereign immunity under *White*. The Court concludes that it does not. First, past courts have recognized tribal sovereign immunity can protect enterprises that are purely commercial in nature. "The question is not whether the activity may be characterized as a business . . . but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe."[96] In fact, numerous entities which carry out a predominately commercial purpose have been held to

---

[92] *Id. See also White*, 765 F.3d 1010; *Barron*, 373 F. Supp. 3d at 1240 (holding that Alaska Native Tribal Health Consortium's purpose of "entering into 'self-determination and self-governance agreements' . . . is 'core to the notion of sovereignty.'").

[93] Dkt. 20 at 4.

[94] *Id.* at 7.

[95] *Id.*

[96] *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006).

share tribes' sovereign immunity.[97] Second, Mr. Cole cites to no authority, nor is the Court aware of any, supporting the proposition that a tribal enterprise serving non-tribal members ceases to have a substantial tribal purpose.[98] Therefore, even if the Court were obliged to take the Mr. Cole's claims as true, they would not necessarily demonstrate that SEARHC's purpose is unrelated to tribal interests. The Court finds that SEARHC's purpose, as established by the Bylaws, sufficiently supports its claim for "arm of the tribe" status.

For the foregoing reasons, the Court finds that the five factors identified in *White* weigh in favor of recognizing SEARHC as an arm of its constituent tribes. SEARHC is thus generally entitled to immunity from suit as traditionally enjoyed by sovereigns.

2. Congress Did Not Abrogate Tribal Immunity Under Any Relevant Antitrust Statutes

Because SEARHC enjoys tribal sovereign immunity from unconsented suit, the only way that Mr. Cole's suit can proceed is if Congress has abrogated tribal immunity for his claims.[99] Congressional abrogation "must be unequivocally expressed in explicit legislation."[100] Abrogation of tribal sovereign immunity may not be implied."[101]

---

[97] *See, e.g.*, *Allen*, 464 F.3d at 1047 (a tribally owned casino); *Cook*, 548 F.3d at 725 (a tribally owned casino); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019) (tribally owned payday lending businesses).

[98] Past courts' determinations that tribal businesses serving both Indians and non-Indians alike retain sovereign immunity cuts against this proposition. *See, e.g.*, *Allen*, 464 F.3d at 1047. Accordingly, absent some authority to the contrary, the Court is not persuaded that merely extending healthcare services to non-Indians would vitiate the benefits received by tribal members or would cease to support the tribes' sovereign interests such that SEARHC would no longer be considered an "arm of the tribe."

[99] *See e.g.*, *Okla. Tax Comm'n*, 498 U.S. at 509.

[100] *Miller*, 705 F.3d at 926.

[101] *See Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1056 (9th Cir. 2004) (holding that the Bankruptcy Code abrogated tribal sovereign immunity by its reference to "all foreign or domestic governments."). *See also Osage Tribe of Indians v. U.S. Dep't of Labor*, 187 F.3d 1174,

16

Mr. Cole brings this suit alleging violations of federal antitrust laws.[102] The Ninth Circuit has held that "federal antitrust law does not 'unequivocally express[ ] in explicit legislation' that it abrogates tribal sovereign immunity."[103] Neither the Sherman Act, 15 U.S.C. § 1, or the Clayton Act refer to tribes explicitly. Nor does either statute use definition of "person" broad enough to unequivocally include tribes by implication.[104] No other antitrust statute under which Mr. Cole could seek relief abrogates tribal sovereign immunity such that Mr. Cole's claims against SEARHC can proceed. Because SEARHC is shielded by tribal sovereign immunity and Congress has not abrogated its immunity for antitrust actions, the Court lacks jurisdiction to hear Mr. Cole's suit against SEARHC or any of its divisions.[105]

Accordingly, SEARHC's Motion to dismiss the claims against SEARHC and AICS pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED**.

---

1181 (10th Cir.1999) (finding the Safe Drinking Water Act "contains a clear and explicit waiver of tribal immunity" because its definition of person includes municipalities, whose definition in turn includes Indian tribes.); *Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir.1989) (holding that the Resource Conservation and Recovery Act of 1976 "clearly indicates congressional intent to abrogate the Tribe's sovereign immunity . . . .").

[102] Dkt. 20.

[103] *Miller*, 705 F.3d at 926 (holding that the Sherman Act and the Clayton Act did not abrogate tribal sovereignty).

[104] The Sherman Act, for example, refers only to states and foreign nations. 15 U.S.C. § 1. Likewise, the Clayton Act purports to apply to "corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country." 15 U.S.C. § 12.

[105] The Sherman Act and Clayton Act create a cause of action against "persons" including corporations existing under state law. 15 U.S.C. §§ 7 and 12. Under Alaska law, where a merger takes place "the merging entity that is not the surviving entity ceases to exist," while the surviving entity assumes all the liabilities of the disappearing entity. Alaska Stat. § 10.55.206. Therefore, for purposes of an antitrust claim, this Court finds that AICS did not exist separately from SEARHC at the time Mr. Cole filed his Amended Complaint. Establishing SEARHC's immunity is therefore dispositive for both SEARHC and AICS as defendants.

17

## B. The FTC is entitled to dismissal for insufficient service of process

The FTC filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.[106] "To determine whether service of process is proper, courts look to the requirements of [Rule 4]."[107] Under Fed. R. Civ. P. 4(c)(1), "[a] summons must be served with a copy of the complaint." The FTC alleges it did not receive a copy of Mr. Cole's First Amended Complaint with the summons.[108] Mr. Cole admits that he did not send a paper copy along with his summons.[109] Therefore, under Rule 12(b)(5), service of process on the FTC was insufficient.

Where service of process is insufficient, the court may dismiss the action or allow the plaintiff an extension of time to cure defects in service.[110] "There is no specific test that a court must apply in exercising its discretion."[111] The Court is persuaded by the absence of any specific claims asserted against the FTC that it is appropriate to dismiss the FTC as a defendant rather than allowing Mr. Cole to perfect service. The Court notes that even if Mr. Cole had properly served the FTC with a copy of his First Amended Complaint, his complaint fails to raise any cognizable claims against the FTC. Even assuming all of Mr. Cole's allegations are true, and construing his claims liberally, he only attributes wrongdoing to AICS, SEARHC, and DHHS. Further, the Court has already disposed of Mr. Cole's motion to compel an FTC investigation, which is the only connection Mr. Cole's filings make between the FTC and this case.

---

[106] Dkt. 28.

[107] *Cho*, 890 F. Supp. 2d. 1190, 1198 (N.D. Cal. 2012).

[108] Dkt. 28 at 3.

[109] Dkt. 31-1.

[110] *Id.*

[111] *Id.*

Furthermore, as discussed below, the Court finds that allowing Mr. Cole another opportunity to amend his complaint would be futile. No additional facts could be plead that would make the FTC—a federal agency—liable for a violation of federal antitrust law. Therefore, the FTC should be dismissed with prejudice.

Accordingly, the FTC's Motion to Dismiss is for insufficient service of process **GRANTED**.

C. *The DHHS and the U.S. Attorney's Office are Entitled to Dismissal Sua Sponte*

The only remaining defendants named in Mr. Cole's First Amended Complaint are the U.S. Attorney's Office and DHHS. Neither of the U.S. Attorney's Office or the DHHS have made a motion to dismiss this action against them. However, the Court here considers dismissing DHHS and the U.S. Attorney's Office *sua sponte* for lack of subject matter jurisdiction and failure to state a claim respectively.

1. Mr. Cole's Antitrust Claim Against DHHS is Barred by Sovereign Immunity

Mr. Cole's Amended Complaint suggests that DHHS is responsible for the loss to his business by facilitating the 340B Program. [112] Although no specific claims are asserted against DHHS, Mr. Cole's allegations sound as claims in antitrust. The 340B Program, he claims, results in an unfair market advantage for certain pharmacies. [113] Mr. Cole also argues that the 340B pharmacies use DHHS funds to engage in unlawful restraint of trade practices.[114] And, the only

---

[112] Dkt. 20 at 4.

[113] *Id.*

[114] *Id.* at 9.

remedy Mr. Cole seeks is treble damages—an antitrust remedy.[115] Accordingly, the Court construes Mr. Cole's claims as an antitrust action against DHHS.

Courts may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(1). Sovereign immunity is one basis for dismissal under Fed. R. Civ. P. 12(b)(1). [116] "It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued."[117] "A suit against a federal agency or officer which seeks relief against the sovereign is, in effect, a suit against the sovereign."[118] Therefore, sovereign immunity is implicated whenever a federal agency is sued.[119] Courts must "strictly construe in favor of the government the scope of any waiver of sovereign immunity."[120] If the plaintiff lacks a specific waiver of sovereign immunity for his claim against the United States, then the suit fails both for want of subject matter jurisdiction, and for failure to state a claim on which relief may be granted.[121]

Private antitrust claims may be brought under the Sherman Act or the Clayton Act.[122] Neither of these Acts contain a waiver of the United States' sovereign immunity. Therefore,

---

[115] *Id.* at 14.

[116] *Orff v. U.S.*, 358 F.3d 1137, 1142 (9th Cir. 2004).

[117] *Id.*

[118] *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88 (1949).

[119] *Id.*; see *Beller v. Middendorf*, , 796–98 (9th Cir.1980), overruled on other grounds by *Lawrence v. Texas*, 539 U.S. 558 (2003).

[120] *Orff*, 358 F.3d at 1142.

[121] *Id.*

[122] *See* 15 U.S.C. §§ 1–2 and 12–27.

Mr. Cole's antitrust claims against DHHS—an agency of the United States—are barred by sovereign immunity. Furthermore, even if such waiver did exist, Mr. Cole's antitrust claims against the government fail under the plain language of those statutes. Both the Sherman Act and the Clayton Act prohibit "persons" from engaging in certain anticompetitive behaviors. "Since, in common usage, the term 'person' does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it."[123] It is well-established that the United States and its agencies cannot be an antitrust defendant.[124]

Here, Mr. Cole brings an antitrust action against DHHS, an agency of the federal government. Even if, sovereign immunity did not lie in this case, DHHS cannot be held to be liable under federal antitrust laws. DHHS is not a "person" under the relevant statutes. Therefore, Mr. Cole's antitrust claims cannot be maintained against DHHS. The Court finds that no amendment could possibly cure this deficiency.

Accordingly, Mr. Cole's claims against DHHS are **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

2. Mr. Cole's Filings are Devoid of any Claims Against the U.S. Attorney's Office

Courts may also dismiss a suit *sua sponte* for failing to state a claim under Fed. R. Civ. P. 12(b)(6).[125] Such a dismissal may be made without notice where the claimant cannot possibly win

---

[123] *United States v. Cooper Corp.*, 312 U.S. 600, 604 (1941).

[124] *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 745 (2004) (citing *Cooper Corp.*, 312 U.S. at 604). *See also Sea-Land Serv., Inc. v. Alaska R. R.*, 659 F.2d 243, 246 (D.C. Cir. 1981) ("[a]ccordingly, we hold that the United States, its agencies and officials, remain outside the reach of the Sherman Act.").

[125] *See Wong*, 642 F.2d at 361–62.

relief.[126] Generally, if a pleading is defective but could be amended to state a claim, an opportunity must be afforded the *pro se* plaintiff to amend.[127] A court need not grant leave to amend where it finds that "the pleading could not possibly be cured by the allegation of other facts."[128]

Mr. Cole makes no claims against or which implicate the U.S. Attorney's Office. Additionally, for the reasons discussed above, there are no facts which Mr. Cole could plead which would make the U.S. Attorney's Office—a federal agency—liable for an antitrust violation.

Accordingly, the U.S. Attorney's Office is **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

## V.    CONCLUSION

For the foregoing reasons the Court **HEREBY ORDERS** as follows,

1.  The Motion to Dismiss at docket 25 is **GRANTED**, and all claims against SEARHC and AICS are **DISMISSED** for lack of subject matter jurisdiction;

2.  The Motion to Dismiss at docket 28 is **GRANTED**, and all claims against the FTC are **DISMISSED WITH PREJUDICE**;

3.  On the Court's own motion, all claims against DHHS and the U.S. Attorney's Office are **DISMISSED WITH PREJUDICE**.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 11th day of October, 2019.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[126] *Omar*, 813 F.2d at 991.

[127] *See Lopez,* 203 F.3d at 1130–31.

[128] *Id.* at 1130.